IN RE APPLICATION OF THE SHELTON STREET RAILWAY COMPANY.

Third Judicial District, New Haven, June Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Section 8 of chapter 169 of the Public Acts of 1893 provides that the finding of the Superior Court, or a judge thereof, as to whether public convenience and necessity require the construction of a street railway parallel to another railway, "shall be final and conclusive between the parties." *Held :*—

1. That the phrase quoted limited the general right of appeal to this court, in cases under this section, to those in which the special jurisdiction therein conferred had been exceeded, or the methods of judicial procedure essential to due course of law had been violated.

2. That the fact that the petitioning railway company was financially unable to build the proposed parallel railroad, was a circumstance

proper to be considered by the trier in determining the question of public convenience and necessity, and that the admission of evidence to establish such fact did not violate the essential methods of judicial procedure.

[Argued June 1st—decided October 5th, 1897.]

APPLICATION for a finding that public convenience and necessity require the extension and construction of an electric street railway parallel to the railroad of the New York, New Haven and Hartford Railroad Company, made to the *Hon. George W. Wheeler*, a judge of the Superior Court; facts found and judgment rendered denying the application, but without prejudice to its renewal, and appeal by the applicant for alleged errors in rulings of the judge.    *No error.*

In this court the appellee filed a motion to dismiss which was briefly argued, and the decision thereon reserved.

The case is sufficiently stated in the opinion.

*George P. Carroll*, for the appellant (petitioner).

*Goodwin Stoddard* and *William D. Bishop, Jr.*, for the appellee (respondent).

ANDREWS, C. J.    The Shelton Street Railway Company was created by the legislature in 1893 (Special Laws of 1893, p. 830) and authorized to construct a street railway in the towns of Derby, Huntington, Milford, Stratford and Bridgeport, to be operated, if so desired, by electricity.

Section 8 of Chap. 169 of the Public Acts of 1893 provides that "no street railway shall hereafter be built or extended from one town to any other town in the public highways, so as to parallel any other street railway or steam railroad, unless . . . such railway shall have applied to the Superior Court or any judge thereof, and shall have obtained from such court or such judge, in the manner hereinafter required and provided, a finding that public convenience and necessity require the construction of such street railway."

On the 22d day of March, 1897, the Shelton Street Railway Company made its application to a judge of the Superior

Court, alleging that it intended and desired to lay and extend its tracks in and through, from and to, some or all the towns named in its charter, in certain public highways, and in such manner that it would, to some extent, parallel the steam railroad of the Naugatuck Railroad Company now leased to and operated by the New York, New Haven and Hartford Railroad Company; and alleged also that public convenience and necessity required the extension and construction of its said railroad, as desired by the applicant, and prayed said judge to make the statutory finding to that effect. The application was duly served on all the parties interested therein, who appeared and were fully heard by the said judge. The judge thereafter made a finding that public convenience and necessity did not require the said street railway to be built and extended as set forth in said application, and thereupon dismissed the same. And the applicant now appeals to this court.

In some respects Chap. 169 of the Public Acts of 1893 (p. 307) is in the nature of a general Act governing the incorporation of street railway companies. While it does not provide a plan for the original incorporation of such companies, its operation involves existing organizations under special charters; it defines the corporate powers of all and regulates their exercise; it controls and limits the franchise granted in all such special charters, and for this purpose it is made a part of every special charter granted by the assembly which enacted it, and of every charter thereafter to be granted.

By § 8 the power to construct a railroad on the lines specified in any charter is limited, by excepting from that grant the power to construct a railroad in the highways from town to town so as to parallel another railroad; this power is directly derived from the general Act on the conditions named. The conditions involve a judicial finding of common convenience and necessity; it is only after such finding that the company becomes invested with the corporate power, through the combined effect of the general Act and the special charter. This phrase, common convenience and necessity, has no legal meaning except when used to indicate a public necessity

which justifies some act affecting the rights of person or property which would not be justifiable if that necessity did not exist. We often speak of public necessity merely as a conducive motive to legislative action, and so used it simply indicates that the legislature thought the action on the whole to be wise ; but when the contemplated action depends for its validity upon a legislative finding of public necessity, the phrase has an important meaning, although necessarily a somewhat indeterminate one. Such legislative finding in many cases lies wholly in discretion. Public necessity, in this sense, is that urgent, immediate public need arising from existing conditions which, in the judgment of the legislature, justifies a disturbance of private rights that otherwise might be legally exempt from such interference. The term is therefore a relative one. It determines, in each case that may arise, the relation of the duty implied in the broad grant of legislative power to promote by appropriate action the interests of the commonwealth, to the limitations of that power established for the protection of private rights. Ordinarily this is wholly a question of public policy to be determined by the legislature. Sometimes, however, the necessity is one which does not affect the whole body politic the same way, but may or may not exist in different localities, for reasons peculiar to each; the power to put in force the legislative action is then conferred on public or private corporations, to be exercised or not as the conditions peculiar to each case may warrant. In some such cases the action of the corporation may be legal or void, according as an actual present public necessity exists ; and in determining the property rights of persons affected by such action, the question of public necessity may become involved. When so involved it is commonly called a question of "public convenience and necessity," or "common convenience and necessity." In this incidental way courts have been called upon to decide whether conditions existing in a particular case create "a public convenience and necessity," within the meaning of some legislative act. The substantial thing to be decided retains much of the inherent indeterminate character of the original question of

public policy; but is limited to the relation of the particular
action asked, to the legal rights of the person or persons
which such action may impair. · The most familiar instance
of this is in the layout of ordinary highways. They are a
ᴨblic necessity, and by a general law the legislature so de-
..ures. No particular proposed highway is affected by the
general declaration unless, under all the particular circum-
stances of that case, in view of the relation of the local needs
to the circumstances of the local corporation bound to build
and maintain necessary highways, and to the situation and
circumstances of the landowners whose property is to be con-
demned, it is of common convenience and necessity. Towns
are charged with the duty of laying out·necessary highways,
and the enforcement of such duty is within the general juris-
diction of the courts; they are forbidden to condemn land
except for necessary highways, and the protection of a land-
owner against an unlawful condemnation is also within the
general jurisdiction of the courts. *Fenwick Hall Co.* v. *Old
Saybrook*, 69 Conn. 32–39. The process providing for a
summary judicial determination of these rights has involved
a considerable exercise of jurisdiction by the courts in the
layout of highways. The question of public convenience
and necessity is, however, left to a committee of freeholders
to be passed upon in the nature of a question of pure fact;
and the court has never undertaken to state what constitutes
public convenience and necessity. The relation between
public convenience and the rights of landowners, or of the
towns on which a burden that may be disproportioned to its
to its wealth and resources, is sought to be laid, cannot be
stated as a legal proposition. The court is obliged to confine
itself in each case to a declaration that the given conditions
do or do not come within the expression. The question is:
Does common convenience and necessity require a highway
at this place? Is a new highway needed between these ter-
mini, to accommodate public travel; and will the proposed
scheme meet and supply that requirement? *Hartford* v. *Day*,
64 Conn. 250, 254; *Clark* v. *Middlebury*, 47 id. 331, 334;
*Terry* v. *Waterbury*, 35 id. 526, 533. And in this question

of common convenience and necessity is included the expense of the proposed highway and the financial ability of the corporation to meet that expense. See the cases above cited; also *Bristol* v. *Branford*, 42 Conn. 321, 323; *Townsend v. Hoyle*, 20 id. 1, 7; *Perkins* v. *Andover*, 31 id. 601; *Hoadley* v. *Waterbury*, 34 id. 38; *Congdon* v. *Norwich*, 37 id. 414; *Howe* v. *Ridgefield*, 50 id. 592, 594. So in the statute under consideration, the "public convenience and necessity" sufficient to "require the construction of such street railway," means a condition existing at the time of the application, in respect to the applying railroad, the mode of public travel, the manner in which those needs are to be supplied, and the probable effect of the proposed road upon the whole question of adequately supplying those needs, as well as in respect to the road proposed to be paralleled, that, in the judgment of the trier, will justify the interference with private rights involved. Railroad companies chartered by the legislature have expended large sums of money in the construction of their roads, which are practically wasted unless the road can be used without loss for the transportation of passengers and freight. It is obviously for this reason that the provisions of § 8 were incorporated into the general Act, and so a legal right given to existing roads to protection against a certain kind of parallel road, when the circumstances of such road is not shown to be, under all the existing conditions, of public convenience and necessity. For the protection of such legal rights an existing road may apply to the courts. *New England R. R.* v. *Central Ry. & Electric Co.*, 69 Conn. 47–54.

The application authorized by § 8 is a summary method of extinguishing this legal right; and involves the question of common convenience and necessity as a fact in each special case; and the statute says that upon this question the decision of the trier on such application "shall be final and conclusive between the parties." The natural meaning of these words, used in such a connection, is to limit, as to these applications, the operation of the general statutes allowing appeals from final judgments on questions of law to the court, to

judgments that may be illegal because the special jurisdiction conferred has been exceeded, or the methods of judicial procedure essential to due course of law have been violated. In this case the only claim of such illegality is that the trial judge found as a fact that the applying railroad company was financially unable to build the proposed railroad. It seems very clear that in ascertaining such a fact the judge did not exceed his jurisdiction; it was one of the circumstances peculiar to the case, proper to be considered in determining whether, under all the conditions then existing, public convenience and necessity required at that time the determination in favor of this applicant of the conditional right of the Naugatuck Railroad to protection against a parallel road.

The rulings on evidence claimed to be erroneous come among the matters the statute intended to leave to the conclusive decision of the trier in determining a question so largely lying in discretion; these rulings did not exceed the jurisdiction of the judge and did not violate the essential methods of judicial procedure.

In *Central Ry. & Electric Co.'s Appeal*, 67 Conn. 197, this court decided that the order of the judge should be final and conclusive in respect to such matters only as the statute confided to his judgment and upon which the parties were duly heard; and that as to other matters, if any were attempted to be adjudicated in such a hearing, the action of the judge was properly reviewable by this court on appeal. In a case where it appeared on the face of the appeal papers that the judge had not attempted to pass upon any matter other than such as the statute confided to his judgment, a motion to erase from the docket of this court would properly be granted. Where it does not so appear this court must of necessity retain the case and consider it. In *Central Ry. & Electric Co.'s Appeal, supra*, we found that the judge had exceeded the authority conferred by the statute, and remanded the matter for further action. In the present case we find that the judge did not exceed his jurisdiction, that there is no error, and that therefore the order and decision is final and conclusive on the parties.

There is no error.

In this opinion HAMERSLEY and HALL, Js., concurred.

BALDWIN, J. (dissenting). In my opinion the methods of judicial procedure essential to due course of law were not pursued upon the trial of the case at bar before the judge of the Superior Court.

His finding states that he should have held that the construction of part of the railway, which the applicant alleges that it desired to construct, was of public convenience and necessity, had he not been of opinion that it had not the financial ability required for the undertaking.

In determining whether a town should be charged by order of court with the duty of laying out and maintaining a new highway, on the ground that it is required by common convenience and necessity, it is proper to consider the probable outlay required for the improvement and the ability of the municipality to sustain such a burden. An expensive road, to connect a city with an important suburb, might be a matter of common necessity, when it would be unreasonable to require the construction of one not costing half as much, between the center of a country town and one of its outlying school districts. Common convenience is not to be promoted by any public work which must lead to oppressive taxation.

In the case at bar, issue was joined on the question whether public convenience and necessity required a certain extension of the petitioner's railway; but it was not one to be built at public expense. The burden was to be borne wholly by the petitioner, and the company was desirous to assume it. It was incorporated for this purpose, among others; and the legislature presumably had it in view when they prescribed the amount of its capital stock in the charter. In addition to the funds that might be thus subscribed, the general laws authorized street railways to be mortgaged for three fourths of their cost. The contemplated extension it is found, was likely to cost $170,000. The authorized capital, not yet subscribed, exceeded in amount a fourth of that sum. A mortgage therefore might be executed which would

provide for the residue. Whether such a financial scheme could be successfully carried through, was not, in my opinion, a matter to be determined in this proceeding by a judge of the Superior Court. Obtaining a favorable finding from him as to public convenience and necessity was a condition precedent to the exercise of the franchise to build. Until the company was in a position to exercise it, it could hardly be expected to enter upon the work of endeavoring to increase its capital or borrow upon the security of a mortgage which as yet had nothing upon which to rest. It was enough for it, I think, to show an intention and desire to build the extension, and corporate power to raise the necessary funds, in the ordinary way, by issues of stock and bonds.

The evidence on which *Judge Wheeler* based his conclusions as to the applicant's financial ability, was admitted against its objections. It was, in my opinion, wholly irrelevant to the cause, and if it be such, the judgment which rested upon it had no legitimate foundation.

Statutes may modify methods of judicial procedure in any manner and to any extent, provided the substantial rights of the parties are preserved. An application like that now before us presents for determination a judicial question. It was brought before a judge of the Superior Court, exercising the judicial power confided to that court, under the provisions of the Constitution. The legislature could rightfully make his determination final and conclusive, notwithstanding any departures from the usual methods of procedure, so long as there were none from those fundamental rules which must govern every contest before a court of justice to make it such a court. One of those rules is that the judgment cannot go beyond the issue. Another is that it must rest on facts which are pertinent to the issue.

I am unwilling to impute to the General Assembly an intent to make any finding by a judge of the Superior Court, upon a judicial question between parties to a proceeding involving both important rights of property and matters of high public concern, final and conclusive, as respects the general appellate powers of this court, when it appears upon

its face that the decision turned upon evidence that had absolutely no bearing on the matter in controversy. I therefore dissent from the judgment of the court.

In this opinion TORRANCE, J., concurred.