FRED J. GRAHAM ET AL. *v.* JAMES P. HOULIHAN ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, JS.

Argued March 3—decided May 10, 1960

*Milton Sorokin,* with whom was *Ethel S. Sorokin,* for the appellant (named plaintiff).

*John A. Mettling,* with whom were *Robert P. Burns* and, on the brief, *John A. Speziale, James B. Lefebre, Salvatore A. DiGiorgio* and *Paul Smith,* city attorney, for the appellees (defendants).

BALDWIN, C. J. This is an action for a declaratory judgment and injunctive relief brought in February, 1958, by the named plaintiff against the city of Torrington, the redevelopment agency of that city, and the individual members of the agency. The named plaintiff is the owner of real estate located within an area designated for redevelopment. Other property owners intervened as coplaintiffs. The named plaintiff, hereinafter called the plaintiff, claims that the action of the redevelopment agency in establishing the redevelopment area is invalid and unconstitutional so far as it concerns his property, because (1) the agency acted arbitrarily, unreasonably and illegally in finding that the area was a "redevelopment area" within the scope of chapter 55 of the 1949 Revision (as amended, General Statutes, c. 130); and (2) the hearing held by the agency was in violation of the due process clause of the fourteenth amendment to the federal constitution and article first, § 12, of the constitution of this state. He also assigns error in the denial of his motions for

disclosure of facts and documents and in two rulings on evidence.

The facts may be stated in summary as follows: Torrington is situated in a relatively narrow valley through which the Naugatuck River flows. After the disastrous flood of August 19, 1955, the Torrington planning commission selected several sites, among them the one involved in this case, which because of the flood and other conditions were believed to be arresting the sound growth of the city. The purpose of the selection was to plan protection against future flooding; improvement of highway circulation and traffic regulation and control; provision for needed off-street parking areas; and betterment of business conditions in the city. Torrington established a re-development agency in October, 1955. Thereafter, the agency designated the area which includes the plaintiff's property as the one to be redeveloped. In January, 1956, the agency employed, as consultants, a firm of professional city planners to survey the area and prepare a plan for consideration by the agency. The area embraces 11.48 acres exclusive of public streets. It adjoins the central business district of the city and is bordered on the north and east by the Naugatuck River; on the south by Fuessenich Park, which includes a baseball field, a gridiron, concrete tennis courts, a playground and a field house; and on the west by Coe Memorial Park and private properties. The area is traversed by two main arteries of traffic, South Main Street and Litchfield Street. Of the 78 buildings involved, 68 are chiefly residential, containing units for 155 families, and 10 are commercial. Some are used for both residential and commercial purposes. The residences are for the most part built close together on small lots. Many of them—single and two- and three-

family houses—are poorly laid out and without central heating and adequate plumbing facilities. They are generally substandard and deteriorated. Of the structures in the area, 61.5 per cent are in need of major repairs, and 33 per cent of minor repairs. In the 1955 flood, the first floors of 70 per cent of these buildings were under water, and the buildings are vulnerable to future flooding; 61.5 per cent are substandard. Four hundred and ten persons in 145 family units live in the area; seventy-one of the families have incomes of $3999 or less. The existing street system is inadequate. The area presents a fire hazard. There have been infrequent property transfers within the neighborhood in recent years.

In May, 1956, the consultants submitted a preliminary project report which the agency caused to be published in serial form in the newspapers. This report did not show, out of deference to the owners, what buildings in the area had been classified as substandard, although this information was provided later. The agency held a number of public meetings in the city hall and in the redevelopment area. At these meetings the preliminary project report was made available; copies were also on file in the agency office in the city hall. On October 16, 1956, the report was approved by the agency, and in April, 1957, the consultants submitted a final project report. This report was published in May, 1957, and was on file in the agency's office in the city hall until October of that year. During this time, an extensive program to publicize the plan was conducted. On October 7, 1957, the voters of the city approved the expenditure of public funds to carry out the plan by a vote of more than two to one. A public hearing on the final project report was held on October 10, 1957, following due notice in the public press. Certain in-

terested persons, including a representative of the plaintiff, appeared at these hearings and spoke in opposition to the plan. The plaintiff's representative was heard without interruption. He offered no evidence and did not examine or cross-examine any witnesses. The hearing was held open by the agency until October 15, 1957, for the reception of any further pertinent information, but the plaintiff did not, during this period, offer anything further. Following the hearing, the agency met several times in executive session, considered the preliminary and final project reports in detail, personally inspected the area, and, on October 28, 1957, unanimously concluded that it was a redevelopment area and adopted the redevelopment plan. The declaration of findings by the agency and its resolution approving the plan were made a part of the finding by the court. The city council also made a finding on October 28, 1957, that the area was a redevelopment area.

The plaintiff has asked for the incorporation in the finding of many of the paragraphs in his draft finding and for the elimination from the finding of many of the facts found. No corrections can be made which would advantage him. Practice Book § 397; Maltbie, Conn. App. Proc. §§ 156, 158.

We shall consider first the plaintiff's claim that the agency acted arbitrarily, unreasonably and illegally in finding that the area was a redevelopment area, and that the trial court erred in sustaining the agency. The plaintiff argues that the main purpose of redevelopment is the "elimination of slums and blighted areas which rankle the soundness and security of urban communities." He urges that the area is not a slum, is not beyond the remedy and control of regulatory legislation, does not require the expenditure of an excessive and disproportionate

amount of public funds, and is not a social and economic liability arresting the sound growth of the city. It may well be, as he claims, and as the court has in part found, that the area is not a slum, which is usually thought of as an unsightly, insanitary neighborhood of ramshackle, vacant buildings, and bad housing accommodations, a breeder of social problems that overtax the facilities of welfare agencies and police. The court found that the area was not shown to have a juvenile delinquency, vice, crime or welfare problem which called for a disproportionate expenditure of public funds for police and fire protection or welfare services.

The declaration of public policy in the statute is, however, a broad one. Nov. 1955 Sup., § N30 (as amended, General Statutes § 8-124). It states, in part, that "there have existed and will continue to exist in the future in municipalities . . . substandard, insanitary, deteriorated, slum or blighted areas which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals and welfare of the residents of the state; that . . . the existence of such areas constitutes an economic and social liability [and] substantially impairs or arrests the sound growth of municipalities . . .; [and] that this menace . . . cannot be dealt with effectively by . . . private enterprise without the aids" provided in the statute. The act defines a redevelopment area as "an area within the state which is deteriorated, substandard or detrimental to the safety, health, morals or welfare of the community. An area may consist partly or wholly of vacant or unimproved land or of land with structures and improvements thereon, and may include structures not in themselves substandard or insanitary which are found to be essential to complete an

adequate unit of development, [if] the redevelopment area is deteriorated, substandard or detrimental." Cum. Sup. 1955, § 484d (b) (as amended, General Statutes § 8-125[b]). While it cannot control the decision of this case, it is interesting to note, as we consider the legislative intent expressed in the act, that in 1959 the General Assembly amended both of the quoted sections by inserting the word "deteriorating" after the word "deteriorated" whereever it appeared. Public Acts 1959, No. 397, §§ 1, 2. This is an indication of an intent that the sections are to be liberally construed within the broad language they contain.

We have held the Redevelopment Act constitutional. *Gohld Realty Co.* v. *Hartford*, 141 Conn. 135, 147, 104 A.2d 365; see *Bahr Corporation* v. *O'Brion*, 146 Conn. 237, 247, 149 A.2d 691; note, 44 A.L.R.2d 1414, 1420, & A.L.R.2d Sup. Serv. The question is whether the agency, purporting to act under the declaration of policy and definition stated in the act, abused or exceeded its powers. The determination of what constitutes a redevelopment area and what property is to be taken is primarily a matter for the redevelopment agency, and its decision is open to judicial review only to discover whether it has acted unreasonably or in bad faith or has exceeded its powers. *Gohld Realty Co.* v. *Hartford*, supra, 146; *State* v. *Fahey*, 147 Conn. 13, 17, 156 A.2d 463; *Velishka* v. *Nashua*, 99 N.H. 161, 165, 106 A.2d 571, 44 A.L.R.2d 1406 & note, 1414, 1437. The inclusion within the area of certain properties which are not substandard does not constitute unreasonable or arbitrary action, because it is the condition obtaining as to the entire area and not as to individual properties which is determinative. The statute specifically so states, and the area concept is borne out by

the cases. Cum. Sup. 1955, § 484d (b) (as amended, § 8-125[b]) ; *Gohld Realty Co.* v. *Hartford,* supra, 147 ; *Berman* v. *Parker,* 348 U.S. 26, 34, 75 S. Ct. 98, 99 L. Ed. 27 ; *Babcock* v. *Community Redevelopment Agency,* 148 Cal. App. 2d 38, 48, 306 P.2d 513 ; *Wilson* v. *Long Branch,* 27 N.J. 360, 379, 142 A.2d 837 ; note, 44 A.L.R.2d 1414, 1439. The conditions in the definition of a redevelopment area are stated disjunctively. The agency could establish a redevelopment area if one or more of the conditions existed. *Oliver* v. *Clairton,* 374 Pa. 333, 340, 98 A.2d 47.

The decision of the redevelopment agency, concurred in by the city council and sustained by the trial court, that the area was "deteriorated" and to that extent "detrimental to the safety, health, morals or welfare of the community" was not arbitrary or unreasonable or in abuse of its powers. The neighborhood is adjacent to what can be called the downtown shopping district of Torrington. It is crossed by two of the city's main thoroughfares. It borders one of the city's oldest parks. It contains a city library. While not a slum, it nevertheless has a large proportion of substandard wooden structures located on small lots and bordering on a complexity of poorly arranged streets. In these days of advanced city planning and urban improvement, the city authorities could properly conclude that there was a probability of greater benefit to the whole community if the land in the area could be put to better use. "Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." *Kulcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538 ; *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 62, 89

A.2d 746; *Couch* v. *Zoning Commission,* 141 Conn. 349, 359, 106 A.2d 173; *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 126, 127 A.2d 822.

The plaintiff claims that he was denied due process of law in that the hearing afforded him no opportunity to know and to meet, by rebuttal, cross-examination and argument, the evidence unfavorable to him. A public hearing was held after due notice, as the statute required. Cum. Sup. 1955, § 485d; Public Acts 1957, No. 13, § 53 (General Statutes § 8-127). No claim is made to the contrary. The trial court found, and its finding is not challenged, that the plaintiff's representative appeared, spoke in opposition to the proposal and was heard without interruption, and that he did not seek to offer any evidence or to examine or cross-examine any witnesses. The due process clause of the fourteenth amendment to the federal constitution, which has substantially the same meaning as article first, § 12, of our state constitution, does not guarantee any particular form of state procedure. Due regard must be had to the nature of the proceeding and the individual rights affected by it. *Proctor* v. *Sachner,* 143 Conn. 9, 17, 118 A.2d 621; *John J. McCarthy Co.* v. *Alsop,* 122 Conn. 288, 296, 189 A. 464; 2 Cooley, Constitutional Limitations (8th Ed.) p. 741. The proceeding in the instant case was to determine the need for the acquisition of private property for a public purpose, and the extent of the acquisition. It required a legislative determination of fact and, thereafter, a determination of the amount of the damages to be paid for the taking. The plaintiff was afforded a full opportunity to appear and oppose, and to offer any evidence he had. For all that appears, he could have examined or cross-examined witnesses or questioned a mem-

ber or employee of the agency, but he did not. He had a fair hearing on the issue of the taking. *Gohld Realty Co.* v. *Hartford,* 141 Conn. 135, 141, 104 A.2d 365. The act gives him a right of appeal from the agency to the courts on the issue of compensation. Cum. Sup. 1955, § 490d (General Statutes § 8-132). There is no merit to his claim of denial of due process.

The plaintiff claims error in the denial of his motions for disclosure and the production of a variety of documents relating to standards used by the agency in determining whether dwellings in the area were substandard. Practice Book §§ 70, 73; General Statutes § 52-197. A ruling on such a motion is within the sound discretion of the court. *Kiessling* v. *Kiessling,* 134 Conn. 564, 568, 59 A.2d 532. That discretion was not abused in the instant case. The litigation deals with the doings of a public administrative agency whose papers were open to the inspection of all. The agency disclosed what dwellings had been declared substandard, although it did not appear what the four standards were which, according to its finding, were used in the determination. The court reviews the action of an administrative agency largely on its record, which, in the instant case, was filed with the agency's pleadings. *Hoffman* v. *Kelly,* 138 Conn. 614, 618, 88 A.2d 382; *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 80, 103 A.2d 814; *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747. The record included reports, proposed plans, the findings of the agency, the final approved plan and a stenographic transcript of the public hearing. This record was supplemented by the examination of witnesses at the trial. A trial tests the court's ruling on a motion for disclosure, for it then appears

whether the mover was hampered, in the preparation and presentation of his case, by the denial of his motion. See *Pottetti* v. *Clifford,* 146 Conn. 252, 258, 150 A.2d 207. We cannot see that the action of the court here prevented the plaintiff from fully trying his case, and we conclude that there was no error in the court's ruling.

Two rulings on evidence alleged as error require only brief discussion. The defendants called as a witness a city planner who had prepared a report concerning the conditions he found in the area in question. The witness testified that this report, together with his so-called survey forms, was turned over to the agency for use by it in reaching its conclusions. In rebuttal, the plaintiff called the secretary of the agency, who testified that he had attended all the executive sessions of the agency at which the data before the agency was discussed in preparation for a final decision. He was then asked whether the agency had examined the survey forms, but the defendants' objection to the question on the ground of irrelevancy was sustained. The trial court has a wide discretion in its rulings on the relevancy of evidence. *Steiber* v. *Bridgeport,* 145 Conn. 363, 366, 143 A.2d 434; *Morico* v. *Cox,* 134 Conn. 218, 224, 56 A.2d 522; Berman, Conn. Evidence, p. 117. The issue was not whether the report of the city planner was borne out by his work sheets, but whether the agency had abused its discretion. If the agency's conclusions on the basis of the information before it was sound, the question whether its members had personally examined the survey forms accompanying the report of the city planner was inconsequential. The court did not abuse its discretion in sustaining the objection to the question.

The court allowed the building superintendent of the city to testify that the buildings in the area did not qualify under the fire district regulations, although the plaintiff objected to the qualifications of the witness. The qualification of an expert witness is largely within the court's discretion, and if any reasonable qualification can be established, the objection goes to the weight of the evidence rather than to its admissibility. *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600; *Sibley* v. *Middlefield,* 143 Conn. 100, 108, 120 A.2d 77; *Sears* v. *Curtis,* 147 Conn. 311, 314, 160 A.2d 742. There was no error in the ruling.

There is no error.

In this opinion the other judges concurred.