[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 10287
The plaintiff filed this appeal of a decision of the Town of Guilford Inland Wetlands and Watercourses Commission (GIWC) thirteen days after the decision was published on December 18, 1991. (RR#35) Service was properly made on the Commission's chairman and the Town of Guilford. The Commission approved, with certain conditions, the Town's application for a regulated activity on Goose Lane, Assessor's Map 86, Lot 65, Zone R-5.
The proposed activity for which approval was sought was set forth in the application as follows:
 "1. First phase of Master Plan for reclamation of site. Cut, fill and grade as necessary to meet D.E.P. requirements of depth to water and bedrock for siting leaf composting facility.
 2. Piping of runoff to control water through site.
 3. Grade and seed municipal outside storage area to stabilize and eliminate ongoing erosion and to control sediment.
 Number of areas of wetlands included in application.
 1. Two enclosed wetland areas. 1.2 acres.
 2. Soils map and soils classification approved by Guilford Inland and Wetlands Commission at the April 10, 1991 meeting."
The right to appeal a decision on an administrative agency is based on strict compliance with the statutory provision that created the right. Since the mandatory statutory provisions establish the court's jurisdiction, failure to comply subjects the appeal to dismissal. Citizens Against Pollution Northwest, CT Page 10288 Inc. v. Connecticut Siting Council, 217 Conn. 143, 152,584 A.2d 1183 (1991). The statutory bases for this appeal are 22a-43(a) and 22a-19 of the General Statutes.
Section 22a-43(a) grants the right of appeal to "any person aggrieved by any. . .decision. . .made pursuant to sections 22a-36 to22a-45, inclusive, by the. . .district or municipality. . ." as well as to "any person owning or occupying land which abuts any portion of land. . .of the wetland or watercourse involved in any . . .decision made pursuant to said sections. . .within the time specified in subsection (b) of section 8-8 from the publication of such decision. . . ." Section 22a-19 provides that "In any administrative. . .proceeding, and in any judicial review thereof made available by law, . . .any person. . .may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."
Section 22a-19 is part of the Environmental Protection Act and empowers private citizens to voice their concerns in ensuring that the air, water and natural resources of the state are protected from unreasonable pollution, impairment or destruction. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710,715, 563 A.2d 1339 (1989). "Inland wetlands constitute a `natural resource.' General Statutes 22a-36." Fromer v. Boyer-Napert Partnership, 42 Conn. Sup. 57, 58, 599 A.2d 1074
(1991). Therefore, intervention in proceedings before an Inland Wetland and Watercourse Commission is authorized by 22a-19. Red Hill Coalition, Inc., supra, 715. A party who has standing to appeal pursuant to 22a-19 is limited to the raising of environmental issues. Mystic Marinelife Aquarium, Inc. v. Gill,175 Conn. 483, 490, 400 A.2d 726 (1978); Gardiner v. Conservation Commission, 222 Conn. 98, 107 (1992). The verified pleading of intervention frames the issues that may be raised by the intervenor on appeal. Mystic, supra. Moreover, such standing is further limited by the jurisdiction of the administrative authority whose decision is being challenged. Connecticut Fund for the Environment v. Stamford, 192 Conn. 247, 250-51,470 A.2d 1214 (1984).
The court finds that the plaintiff is also an abutting landowner to the subject property at Goose Lane. The court takes judicial notice of the "STIPULATION OF THE PARTIES" approved by CT Page 10289 the court in No. CV-90-0307081-S, entitled Goss v. Town of Guilford. Also, see (RR#19) and (RR#20). Plaintiff, therefore, is found to be an aggrieved "person" within the provisions of22a-43(a).
The property in question consists of approximately 52 acres located on Goose Lane and owned by the Town. A municipal septic facility was installed on a portion of the property in 1967 (RR#13) and, in addition to upgrading and expanding that facility, over the years the Town has excavated sand and gravel from the site for use on various municipal projects and road maintenance. (RR#13).
The municipal septic facility eventually caused pollutants to permeate the land and ground waters underlying the surface of the property and plaintiff's abutting land. (RR#25, p. 3). On October 30, 1990, the plaintiff sought to enjoin the Town from further excavation as well as from construction and repair of septage lagoons without first determining the environmental effect upon the inland wetlands and watercourses of the property. (RR#19). As a result of that action, a stipulated judgment was entered on December 3, 1990, requiring the Town to flag and map the wetlands and watercourses on the site. (RR#20). In addition, the Town was ordered to apply to the Commission for a permit for any activity that constituted a regulated activity within the provisions of 22a-42a(c). (RR#20). The Town flagged and mapped the wetland site and, on July 3, 1991, it applied to the Commission for a regulated activity permit. (RR#1).
The Commission held a public hearing on the application or October 9, 1991 (RR#11), and continued the hearing to November 13, 1991. (RR#36). The plaintiff filed a "Notice of Intervention" on October 9, 1991, and was granted intervenor status. Plaintiff appeared with counsel and exercised his right to speak at both sessions of the public hearing regarding the application. (RR##11, 15, 26). The gravamen of his appeal is directed at the second session. The Town's application was presented by the Town Engineer, James Portley, P.E. and the Town Sanitarian, William Green. (RR#36). Upon completion of the presentation in support of the application (RR#36, p. 23), the Commission's chairman inquired whether the members of the Commission had any questions. (RR#36, p. 24). Shortly afterwards, Mr. Green advised the Commission that he had read a letter sent to the Commission by "Lee Alexander" and was uncertain as to whether the letter ". . .was a recommendation, or a CT Page 10290 thought, on how the pond should proceed. . . ." He therefore asked that the Commission allow Alexander "to address questions." (RR#36, p. 24). Mr. Portley then stated that the Alexander letter (RR#26), dated November 11, 1991, was in support of, though not a part of, the application and requested that the letter be submitted as an exhibit. (RR#36, p. 25).
Lee Alexander, Ph.D., Certified Wildlife Biologist, addressed the Commission at length, was questioned by members of the Commission, and the plaintiff and his counsel questioned Dr. Alexander to an extent that is detailed in the major portion of the transcript of the hearing. (RR#36, pp. 25-86). Dr. Alexander did not appear as an expert called by the Commission nor was he at the hearing in any capacity other than a member of the public. His two-page letter had been received and dated-stamped by the Commission "Nov 12, 1991."
Following a lengthy dialogue between Dr. Alexander and himself, the plaintiff requested the Commission to continue the hearing in order to provide the plaintiff "an opportunity to present expert opinion on the issues raised by Mr. Alexander if they are going to be pertinent." (RR#36, pp. 75-76). In response to this request, the Commission voted not to continue the hearing further because of the time limitation on completing the hearing on the application. (RR#36, p. 76 et seq.). The Commission did, however, grant the plaintiff an additional two weeks to submit any written comments or other evidence. (RR#36, p. 97). The intervenor party did not exercise this right (RR#33), and, on December 11, 1991, the Commission voted approval of the application subject to several conditions. (RR#33).
This appeal was filed on December 31, 1991. An answer and a return of record were filed on March 26, 1992. The plaintiff's and the defendant's briefs were filed on April 4, 1992 and April 23, 1992, respectively. The parties appeared, through counsel, on June 17, 1992, and the matter was continued, by agreement, to November 17, 1992.
The first issue raised on this appeal is a claim of violation of the constitutional right to due process of law in that the plaintiff was denied: (1) an opportunity to cross-examine effectively a "technical witness"; (2) an "opportunity to effectively review the documentary and testimonial evidence offered by the principal technical witness introduced by applicant"; and (3) "the opportunity to effectively CT Page 10291 offer rebuttal evidence to the principal technical witness introduced by applicant, all as a consequence of the late introduction of the evidence on the last evening of the public hearing."
Notwithstanding evidence to the contrary, the plaintiff seeks to elevate the status of one member of the public, Dr. Alexander, who appeared at the hearing to that of a witness testifying under oath and, having so designated him as a "witnesses", use the designation as a springboard into the realm of constitutional rights. A string of cases cited by the plaintiff in support of his claim falls far short of focusing on the issue raised by this claim. The cases cited involved ex parte communications to an administrative agency subsequent to the close of the public hearing. While the public discussions between those of opposing points of view at public hearings can, at the very least, become heated and the atmosphere volatile, no case has been presented by the plaintiff to support the characterization of a member of the public who speaks in support of an application, as a "witness" with all of the connotations of due process the term implies.
The plaintiff appeared at the hearing as a party pursuant to the provisions of 22a-19. Whether that statutory status empowered him to subpoena witnesses and require them to give testimony under oath is not at issue. Clearly, the Commission had no power to require the attendance of members of the public, either for or against the application. "The due process clause of the 14th amendment to the federal constitution, which has substantially the same meaning as article first, 12, of our state constitution, does not guarantee any particular form of state procedure. Due regard must be had to the nature of the proceeding and the individual rights involved." Graham v. Houlihan, 147 Conn. 321, 330, 160 A.2d 745 (1960). See, also, Connecticut Fund for the Environment, Inc. v. Stamford, supra.
Proceedings before an administrative board are informal and are not bound by strict rules of evidence. Id. "A commission, operating at the administrative level. . .has a wide latitude in the mode permitted to parties in presenting their views before it." Forest Construction Co. v. Planning Zoning Commission,155 Conn. 669, 676, 236 A.2d 917 (1967). "Due Process of law requires that the parties involved have the opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Norooz v. Inland CT Page 10292 Wetland Agency, 26 Conn. App. 564, 569, 602 A.2d 613 (1992). Requests for continuances invoke the discretionary authority of an administrative agency and every reasonable presumption in favor of its decision will be made. A board's ruling on such requests will be reversed only if it represents a gross abuse of discretion. Concerned Citizens of Sterling, Inc. v. Connecticut Siting Council, 215 Conn. 474, 485, 576 A.2d 510 (1990).
The plaintiff next claims that the Commission relied heavily on the "testimony" of Dr. Alexander. In the plaintiff's view, this is significant because such reliance prejudiced the plaintiff's case in that he was effectively denied an opportunity to cross-examine Dr. Alexander. This claim of "heavy reliance" is unsupported by the record. However, the weight and credibility to be given evidence is solely within the province of the factfinder. Huck v. Inland Wetland and Watercourse Agency,203 Conn. 525, 542 (1987). It seems beyond dispute that a municipal administrative agency "composed of laymen, is entitled to technical and professional assistance regarding matters beyond its expertise. . . . This entitlement is necessarily implied in the legislation creating the agency and setting forth its duties. (Citations omitted)." Norooz, supra, 569.
"[A]n administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it as long as the conduct of the hearing is fundamentally fair." Huck, supra. In reviewing the record, this court must defer to the Commission's assessment of the credibility of the witnesses and to its right to believe or disbelieve the evidence presented, in whole or in part, including so-called expert testimony. Gardiner, supra, 108. If plaintiff's characterization of Dr. Alexander's comments as "highly technical" is accepted, the Commission still cannot be denied its right to give the weight and credit it felt was deserved. In reviewing the record, it is difficult to view the hearing on November 13, 1991 as anything but fundamentally fair.
The plaintiff bears the burden of proving that he was prejudiced by the action of the Commission in allowing Dr. Alexander's comments and not providing plaintiff further opportunity to present more evidence following a continuance. The plaintiff disregards the fact that he was given an opportunity to submit further evidence within a two-week period after the close of the public hearing. While the propriety of CT Page 10293 such an ex parte submission subsequent to closing the public hearing is not at issue here, the act of granting plaintiff the opportunity evidences the effort made by the Commission to afford plaintiff his right to be heard on the issues raised by the applicant as well as those raised by the plaintiff, some of which were beyond the purposes of the hearing. (RR#36, pp. 72-80, 82-87).
The plaintiff's claims of a violation of his due process rights to "effectively review the documentary and testimonial evidence" of Dr. Alexander appear to rest upon the characterization of Dr. Alexander as a "technical witness" offered by the Town as well as the claim that, in offering the Alexander letter in support of the application, the Town adopted and incorporated as part of its application that document. The record clearly disputes these claims. (RR#36, pp. 25-27, 76-80). Since the record is totally devoid of any evidence that the applicant requested permission to amend its application or ever attempted to amend it, the court is left with only this bare assertion unsupported by any citations of law or cases. The plaintiff does not dispute the Commission's right to consider all information, including the letter, offered at the public hearing. What he asserts here is a "right" to study and review on demand, at his convenience, any documents or comments from the public in opposition to opinions held by him. The proceedings before the Commission are, by law, entitled to be conducted informally and not be bound by strict rules of evidence. "Nor does due process guarantee any particular form of state procedure. Katz v. Brandon, 156 Conn. 521, 537, 245 A.2d 579; Graham v. Houlihan,147 Conn. 321, 330, 160 A.2d 745, cert. denied, 364 U.S. 833,81 S.Ct. 70, 5 L.Ed.2d 57." Welch v. Zoning Board of Appeals,158 Conn. 208, 212 (1969).
"The guiding rule is that, at the hearing, `no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the board is asked to act.'. . . `The principle requiring a testing of testimonial statements by cross-examination has always been understood as requiring, not necessarily an actual cross-examination, but merely an opportunity to exercise the right to cross-examine if desired.' 5 Wigmore, Evidence (3d Ed.) #13711." Welch, supra, 212-213.
The second claim on appeal is that the Town failed to CT Page 10294 adequately show that there were no feasible and prudent alternatives to the application pursuant to the provisions of22a-19(b). It is contended that approval of the application for the permit should be reversed and the permit revoked.
Subsection (b) of 22a-19 states: "Whether the proposed activity is `reasonably likely to have, the effect of unreasonably polluting, impairing or destroying' is a question of fact for the commission." Fromer, supra, 58. Once the commission makes a finding of fact pursuant to 22a-19(b), the conduct described in the permit cannot be authorized if there exists a feasible and purdent alternative consistent with the reasonable requirements of the public health, safety and welfare.
The record indicates that, prior to the filing of its application, a determination was been made that the Town's use of the property was a source of unreasonable pollution. (RR#15, #18, #20). The Commission, in voting approval of the application, explicitly found that the proposed activity was not likely to cause pollution, impairment or destruction of the wetlands. (RR#33). In fact, the record indicates that the Master Plan (RR#18) referred to in the application (RR#1) was an engineering report designed, in part, to remedy some of the environmental problems existing on the site. (RR#36. D. 21).
William Green, Town Sanitarian, and a wetlands expert who appeared before the Commission in both capacities on behalf of the applicant, testified that the proposed activity would remedy the existing problem of erosion on the site. (RR#36, pp. 13-21). Green testified that the proposed activity would enhance the wetlands by creating a greater diversity of plants and animals associated with wetlands habitat and, essentially, that the wetlands of the site did not support any vegetation or wildlife. (RR#36, pp. 13-21).
The comments and letter from Dr. Alexander were no more than duplicative of Green's preparation and testimony and, as reflected in the record, had a cumulative effect at best. (RR#36, pp. 25-86). The engineering report stated that the proposed activity would ". . .not only increase biological productivity, mitigate flooding, provide for groundwater recharge but. . .also afford educational and recreational potential as well as enhance the aesthetics of the entire area." (RR#18, p. 7).
The Commission further found that the proposed activity CT Page 10295 would "improve an existing wetland area, "make a positive environmental impact, "increase the capacity of the area to support fish and wildlife," protect surface and groundwater and "improve public health and safety by providing a leaf composting facility." (RR#33). There is substantial evidence in the record to support the Commission's finding of fact that the proposed activity was not likely to cause pollution, impairment or destruction of the wetlands.
Notwithstanding its finding that the proposed activity was unlikely to result in unreasonable pollution, the Commission still was required to consider alternatives to the applicant's proposal. Gardner, supra, 109. In this regard the Commission made a finding that there was no feasible and prudent alternative. (RR#33). Section 22a-42a(d) of the General Statutes requires the Commission to consider the factors set forth in 22a-41 when acting on an application.
The six factors in 22a-41(a) are:
 (1) The environmental impact of the proposed action;
 (2) The alternatives to the proposed action;
 (3) The relationship between short-term uses of the environment and the maintenance and enhancement or long-term productivity;
 (4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;
 (5) The character and degree of injury to, or interference with, safety, health, or the reasonable use of the property which is cause or threatened; and
 (6) The suitability or unsuitability of such activity to the area for which it is proposed. CT Page 10296
In addition, in the case of an application which received a public hearing a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. General Statutes 22a-41(b).
In Manchester Environmental Coalition v. Stockton, 184 Conn. 51,61, 441 A.2d 68 (1931), our Supreme Court interpreted the phrase "feasible and prudent alternative" as used in the Environmental Protection Act of 1971. The court looked to the federal construction of "feasible and prudent alternative" standard found in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 406 (1971). A "feasible alternative" is not an impractical or nonexistent alternative. Manchester Environmental Coalition, supra, 62; Overton, supra, 411. A "prudent alternative" is an alternative which is "economically reasonable in light of the social benefits derived from the activity." Manchester Environmental Coalition, supra, 63; Overton,. supra, 412-13. Like the applicable statutes[1] in Overton, the main objective of 22-19 and 22a-41 is the preservation of natural resources. Under Overton, "a reviewing court must be able to find that the [agency] could have reasonably believed that in this case there are no feasible alternatives or that the alternatives do involve unique problems." Overton, supra.
The plaintiff argues that under Overton, the record must contain adequate technical and economic analysis demonstrating that no feasible and prudent alternative exists. However, it is not mandatory for the applicant "to submit formal plans or drawings for all possible alternatives." Red Hill Coalition. supra, 726. Here, the plaintiff proposed that the Commission consider "to do nothing" as the alternative. (RR#36, p. 54). He submitted this alternative despite being a party to the "Consent Order" (RR#20) which entered findings of pollution on the subject property, some soil erosion and impairment of water quality thereon with the possibility of at least some contaminated ground water flowing, ultimately, from Town property into plaintiff's property.
The Commission did in fact consider plaintiff's proposed alternative and found that "doing nothing" was not a reasonable and prudent alternative. (RR#33). As noted earlier, the Commission made a finding from substantial evidence that the proposed activity would improve the wetlands after it had CT Page 10297 considered many alternatives of the leaf composting facility at other sites. The engineering report submitted as part of the application identified site alternatives and the unique problems associated with them. (RR#28, p. 3). The Town Engineer testified in support of the study conclusion that the Goose Lane property was the only feasible and prudent site for the multiple activities listed in the application. (RR#36, pp. 809).
There was substantial evidence to support the Commission's finding that there were no feasible and prudent alternatives. Judicial review of the Commission's decision is limited in scope. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). It is not the court's function to reconsider factual issues or attempt to weigh the credibility of witnesses. Kaesar v. Conservation Commission, 20 Conn. App. 309, 311, 567 A.2d 383
(1989).
"The court is limited to a review of the evidence and reasoning the agency has placed on the record." Huck, supra, 540-42. The court must determine whether there is a logical and rational basis for the decision or whether, in light of the evidence, the agency has acted illegally or in abuse of its discretion. Raybestos-Manhattan, Inc. v. Planning Zoning Commission of Trumbull, 186 Conn. 466, 470 (1982). The plaintiff has the burden of proof as to the existence of any abuse of discretion by the Commission. Red Hill Coalition, supra, 718; Blaker v. Planning Zoning Commission, 212 Conn. 471, 473
(1989).
The "agency decision must be sustained if the record reveals substantial evidence in support of any given reason." Huck, supra, 540-42. "The evidence, however, to support any such reason must be substantial." Huck, supra, 539-40. "Substantial evidence will be found to exist if the record affords a substantial basis from which the fact in issue can be reasonably inferred." Madrid Corporation v. Inland Wetlands Agency,25 Conn. App. 446, 448 (1991).
The record here reveals that there is substantial evidence to support the reasons stated by the Commission in reaching its decision. The plaintiff has failed to sustain his burden of proving that the Commission acted improperly, illegally and in abuse of its discretion. Accordingly, the appeal is dismissed.
BY THE COURT: CT Page 10298
Leander C. Gray, Judge