[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is an appeal from a determination by the Commissioner of CT Page 5280 Revenue Services ("Commissioner") assessing the plaintiffs an additional conveyance tax on the conveyance of property known as 845 North Colony Road in Wallingford, Connecticut.
The parties have stipulated that on June 27, 1995, the plaintiffs were owners of real property at 845 North Colony Road in Wallingford. On June 27, 1995, the plaintiffs conveyed the subject property for the sum of $6,000,000. The plaintiffs paid a conveyance tax of .5%, or $30,000, on the full purchase price. The Commissioner audited the plaintiffs' conveyance and assessed an additional .5% or $30,000, plus interest.
The subject property consisted of 17 acres of land on Connecticut Route 5. Prior to June 27, 1995, the property was improved with a 130,000 square foot manufacturing plant used for manufacturing aerospace parts for the national aerospace program. The aerospace company vacated the building, which remained vacant until the plaintiffs entered into an agreement to sell the land to a developer to construct a building to house a super Kmart. A condition of sale required the plaintiffs to clear the property of all structures and to clear up any pollution existing on the land caused by the aerospace plant before the conveyance of title to the property. Prior to the June 27, 1995 sale date, the plaintiffs razed everything on the premises except a small shed, which the Department of Environmental Protection ("DEP") required the plaintiffs to leave standing for the DEP's use in monitoring the environmental clean-up of the site. The shed was removed several months after the conveyance by the plaintiffs when the DEP no longer needed the shed to store its equipment in monitoring the clean-up.
The plaintiffs contend that the property, when sold, was unimproved land and therefore should be taxed at the rate of .5% pursuant to General Statutes § 12-494 (b)(1). The Commissioner contends that the subject property was improved land pursuant to § 12-494 (b)(1), and, therefore, it should be taxed at the rate of 1%. The Commissioner contends that the subject land is improved land since the land had a shed on it used by DEP and also the land had access to a town road, water, sewers and electricity.
Section 12-494 (b) provides, in part: "The rate of tax imposed under subdivision (1) of subsection (a) of this section shall, in lieu of the rate under said subdivision (1), be imposed on certain conveyances as follows: (1) In the case of any conveyance of real property which at the time of such conveyance is used for any purpose other than residential use, except unimproved land, the tax under said subdivision (1) shall be imposed at the rate of one per cent of the consideration for the interest in real property conveyed." Section 12-494 imposes a tax on two categories of conveyances of real property, residential and CT Page 5281 nonresidential land. Unimproved land, which is neither residential or nonresidential, is taxed at the rate of residential land.
There are two issues in this case. The first issue is whether the existence of the temporary shed on the subject property, required by the DEP to remain on the property at the time of sale solely for its own use, make the property an improved nonresidential parcel of land. The second issue is whether the term "unimproved land" means vacant land, without structures, as the plaintiffs contend, or land that is vacant but has site improvements, as the Commissioner contends.
The existence of the shed temporarily on the plaintiffs' property after the sale at the insistence of the DEP and solely for the benefit of the DEP for the storage of their equipment does not rise to the level of being an improvement made by the property owners to their property. Under a condition of the sale to the developer of the Kmart, the plaintiffs were obligated to remove all structures form the land. The shed did not contribute to the removal of the pollution on the property. The shed's only function was to assist the DEP in storing their equipment while it monitored the removal of pollution prior to the sale. The shed, therefore, by itself, could not convert the subject land from an unimproved parcel to an improved parcel.
We turn to the second issue, which is the meaning of "unimproved land." Several cases have dealt with this issue. In Angell v. Hennepin CountyRegional Rail Authority, 578 N.W.2d 343 (Minn. 1998), the Minnesota Supreme Court construed the term "improved land." The plaintiff inAngell was injured when she rode her bicycle on a dirt bicycle path located on the Rail Authority's property leading to a loading dock, which had a four foot drop and no posted warnings of the drop. The Rail Authority claimed a statutory exemption from liability based on the land being unimproved. Part of the evidence in Angell was that the Rail Authority had purchased property which contained structures, remains of old tracks and the loading dock. The Rail Authority demolished the several structures leaving the old railroad tracks and the loading dock. Id., 345. The loading dock was "part of a foundation on which stood a building of some type that was used by the former owner. . . . [T]he structure was removed but the loading dock was not." Id., 347-48. Under these facts, the court in Angell concluded that the land was not unimproved because the Rail Authority cleared the land of useless structures, which bettered the land and "made it more valuable for any kind of development and helped increase its value." Id., 348.
The term "unimproved land" has not been defined by our legislature. When the words of a statute are not explicit, we may construe words and phrases according to their commonly accepted usage, and look to the common CT Page 5282 understanding expressed in dictionaries. Miller v. Zoning Board ofAppeals, 36 Conn. App. 98, 102, 647 A.2d 1050 (1994).
The Commissioner points out in his trial brief that Black's Law Dictionary defines improved land as "[r]eal estate whose value has been increased by landscaping and addition of sewers, roads, utilities and the like." Black's Law Dictionary (6th Ed. 1990), p. 757. Unimproved land is defined as "[a] statutory term which includes lands, once improved, that have reverted to a state of nature, as well as lands that have never been improved." Id., p. 1531.
In addition to looking at dictionary meanings of words used in statutes, we can also be guided by other statutes regarding the same or similar subjects, because our courts have recognized a presumption that the legislative body uses the same term consistently to make one body of law. Doe v. Institute of Living, 175 Conn. 49, 58, 392 A.2d 491 (1978).
We note that in our redevelopment statutes, a "redevelopment area" is defined in General Statutes § 8-125 (b) to mean "an area within the state which . . . may consist partly or wholly of vacant or unimproved land or structures not in themselves substandard." See also Graham v.Houlihan, 147 Conn. 321, 327, 160 A.2d 745 (1960), (court cited General Statutes § 8-125 (b), stating that "such a development area may consist of `vacant or unimproved land or of land with structures'").
In Sterling-Nash Corp. v. Combes, the New York Court, Appellate Division, Second Department, 122 N.Y.S.2d 413, 282 App.Div. 734 (1953), construed the term "unimproved lots" in a zoning ordinance to mean a vacant lot rather than a lot with a building or structure on it. A dealer's used car lot that had been leveled, paved and a retaining wall constructed was not enough to remove the lot from a vacant lot category to an improved lot category. Id., 414.
It would appear that both Sterling-Nash Corp. v. Combes, and Graham v.Houlihan support the plaintiffs' contention that unimproved land is equated to vacant land or land devoid of structures. However, Angell v.Hennepin County Regional Rail Authority and the definitions in Black's Law Dictionary support the Commissioner's argument that the plaintiffs' land was improved property. When we analyze the facts in this case, we have a 130,000 square foot aerospace manufacturing plant that was torn down and removed from the premises to prepare the site for the construction of a super Kmart commercial building. Not only was the aerospace plant taken down and removed, but the plaintiffs were required, as a condition of the sale, to clear the property of pollution resulting from the manufacturing of aerospace parts. We find from these facts that substantial improvements were made to the subject site to meet CT Page 5283 the conditions of the purchaser. Certainly, the value of the subject land was greatly enhanced with the removal of the aerospace plant and the pollution existing on the property. As the Minnesota Supreme Court concluded in Angell v. Hennepin County Regional Rail Authority, supra,578 N.W.2d 348, [i]n clearing the land of useless structures and track the [Authority] bettered the land, made it more valuable for any kind of development and helped increase its value."
We conclude that the better reasoning requires us to find that the subject site was not unimproved land for the purposes of the conveyance tax statute. Accordingly, the plaintiffs' appeal is dismissed, without costs to either party.
Arnold W. Aronson Judge Trial Referee