## PEQUONNOCK YACHT CLUB, INC. *v.* CITY OF BRIDGEPORT ET AL.
### (SC 16500)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued October 25, 2001—officially released March 5, 2002

*Thomas W. Bucci*, with whom was *Russell D. Liskov*, for the appellants (defendants).

*Thomas J. Rosati*, with whom were *Robert K. Marzik* and, on the brief, *Robert C. Bird*, for the appellee (plaintiff).

*Scott Sawyer, William H. Mellor*, pro hac vice, *Scott G. Bullock*, pro hac vice, *Dana Berliner*, pro hac vice, and *Ilya Somin*, pro hac vice, filed a brief for the Institute for Justice as amicus curiae.

*Opinion*

SULLIVAN, C. J. The defendants, the city of Bridgeport (city), the Bridgeport redevelopment agency (agency) and the Bridgeport port authority (authority), appeal from the judgment of the trial court, rendered after a court trial, granting a mandatory injunction ordering them to reconvey to the plaintiff, Pequonnock Yacht Club, Inc., certain real property taken by eminent domain. The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We affirm the judgment of the trial court.

In their appeal, the defendants claim that the trial court improperly: (1) concluded that the taking of the plaintiff's property by eminent domain was not legally necessary for the accomplishment of the city's redevelopment plan because the plan was purely speculative; (2) based that decision on evidence that a redeveloper chosen by the defendants to develop the renewal area was not able to perform its development plan and, therefore, was discharged by the defendants; and (3) found that the plaintiff was not legally required to allege and

prove that it would suffer irreparable harm before the court could issue mandatory injunctive relief. The plaintiff argues, to the contrary, that the trial court appropriately concluded that the defendants improperly refused to attempt to integrate the plaintiff's property into the redevelopment plans. We affirm the trial court's judgment on the alternate ground that the defendants' failure to consider integration of the plaintiff's property into the redevelopment plan was unreasonable and, therefore, the taking of the plaintiff's property by eminent domain was not necessary. Accordingly, we need not address the three issues that the defendants raise on appeal.

The trial court reasonably found the following facts. The plaintiff initially brought an action against the defendants seeking a temporary and permanent injunction preventing them from taking the plaintiff's property by eminent domain. Before any hearing in that action, the city acquired title to the plaintiff's property by eminent domain, and the plaintiff alternatively sought a mandatory injunction ordering the defendants to reconvey the plaintiff's property.

The plaintiff's property consists of two acres and has been owned and operated by the plaintiff as a 250 member private yacht club and marina for nearly ninety-five years. Located at 66 California Street in Bridgeport, the property is composed of a two-story clubhouse containing a bar, restaurant, recreation and meeting rooms, docks containing 196 boat slips, a gas dock, which is open to the public, and a storage area for those boats that are removed from the water during the winter. Open all year round, the club is chartered for 250 dues paying members. Members of the public are, however, allowed to enter the premises but not the dock area, and they may purchase food and beverage items as long as a member signs them in. The buildings and docks on the premises are in good condition. There is ample

parking on the premises and in two lots across from the clubhouse.

The property in question is part of a larger fifty acre site known as Steel Point, which is the subject of the East Side NDP No. 1 Urban Renewal Plan Amendment No. 8. The plan originally was adopted in 1970 and has been revised eight times. Approximately ten acres of the Steel Point site are situated on Bridgeport Harbor comprising six separate water dependent users, one of which is the plaintiff. The remaining forty upland acres are generally in a blighted condition, and many of the buildings on those properties already have been demolished. The original renewal plan and its first seven amendments did not provide for the acquisition of the ten acres owned by the six water dependent users. In 1998, the city was negotiating with Alex Conroy, who eventually was designated as the city's developer. Conroy and the city concluded that the scope of the project and the need for financial support made it necessary to acquire all the properties in the "East Side NDP Area No. 1," including the waterfront properties. Accordingly, the city adopted amendment 8, which included the taking by eminent domain of all fifty acres of Steel Point, including the waterfront properties. After amendment 8 was passed, the city hired TPA Design Group (TPA) to assist the six water dependent users to find suitable relocation sites in the event of condemnation.

Upon the city's decision to acquire the plaintiff's property, the plaintiff commenced the injunction action underlying this appeal. During the pendency of the action and while TPA and the plaintiff were attempting to find an alternate site for the yacht club, the parties agreed to the plaintiff's request for a temporary injunction barring the taking. The trial court found that the plaintiff had made numerous efforts to discuss with the defendants the integration of its property into the Steel Point redevelopment plan. The plaintiff had clearly indi-

cated that it was willing to invest in its property and work with the developer to assimilate the property into the overall plan. The city routinely and consistently rejected the plaintiff's efforts to negotiate and maintained that it needed to take the plaintiff's property. The negotiations pertaining to an alternate site for the yacht club broke down in 1999. The trial court specifically found that although the defendants had made an honest effort to find a suitable substitute location for the yacht club, none was available. In March, 2000, while the action was pending, the agency formally initiated condemnation of the plaintiff's property by filing a certificate of taking in the Bridgeport land records.[1]

The plaintiff subsequently filed an amended complaint challenging the city's decision to take its property and requesting that the trial court restore title to the

[1] General Statutes § 8-129 provides in relevant part: "The redevelopment agency shall determine the compensation to be paid to the persons entitled thereto for such real property and shall file a statement of compensation, containing a description of the property to be taken and the names of all persons having a record interest therein and setting forth the amount of such compensation, and a deposit as provided in section 8-130, with the clerk of the superior court for the judicial district in which the property affected is located. Upon filing such statement of compensation and deposit, the redevelopment agency shall forthwith cause to be recorded, in the office of the town clerk of each town in which the property is located, a copy of such statement of compensation, such recording to have the same effect as and to be treated the same as the recording of a lis pendens, and shall forthwith give notice, as hereinafter provided, to each person appearing of record as an owner of property affected thereby and to each person appearing of record as a holder of any mortgage, lien, assessment or other encumbrance on such property or interest therein . . . . The redevelopment agency shall cause such certificate of taking to be recorded in the office of the town clerk of each town in which such property is located. Upon the recording of such certificate, title to such property in fee simple shall vest in the municipality, and the right to just compensation shall vest in the persons entitled thereto. At any time after such certificate of taking has been so recorded, the redevelopment agency may repair, operate or insure such property and enter upon such property, and take whatever action is proposed with regard to such property by the project area redevelopment plan. . . ."

property to it. The trial court heard evidence on August 7 and 8, 2000. After the taking of testimony had been completed but before a decision had been rendered, the trial court learned that the city had dismissed Conroy, the designated developer, from the redevelopment project and that the redevelopment project might be abandoned. The trial court then held a posttrial hearing on December 15, 2000.

The only witness to testify on December 15, 2000, was Michael Freimuth, the city's redevelopment director. Freimuth testified that Conroy and his partners had withdrawn from the redevelopment project. He stated, however, that the defendants had not abandoned the redevelopment project for Steel Point and were still pursuing it. He testified that the city currently was soliciting new proposals and that the deadline for filing proposals would be January 31, 2001. Freimuth further testified that the development now would be commercial rather than retail because it was obvious that Conroy had withdrawn from the project because it was difficult to obtain an adequate number of investors. He also indicated to the court that the defendants had not considered allowing the plaintiff to remain on its property or assimilating the property into whatever proposal might be approved. The trial court concluded at the hearing that the issue of assimilation was at the heart of the controversy and offered the parties two alternative resolutions. The first option was for the court to decide the case on the evidence presented. The second option was for the court to extend the hearing to a future date, which would necessitate granting the plaintiff continued occupancy of the premises for an agreed upon time. The parties chose to have the trial court decide the case.

The trial court rendered judgment for the plaintiff and ordered the defendants to reconvey the property to the plaintiff. The court based its decision on the fact

that the defendants had not considered allowing the plaintiff to remain on the property. Specifically, the trial court concluded that it was unreasonable for the defendants to refuse to negotiate with the plaintiff regarding the integration of the property into the redevelopment plan.

Preliminarily, we briefly address the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Torres* v. *Waterbury*, 249 Conn. 110, 118–19, 733 A.2d 817 (1999)." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000); *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 565–66, 775 A.2d 284 (2001).

"[T]he governing principles for our standard of review as it pertains to a trial court's discretion to grant or deny a request for an injunction [are]: A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . *Walton* v. *New Hartford*, 223 Conn. 155, 165, 612 A.2d 1153 (1992). Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion; *Wehrhane* v. *Peyton*, 134 Conn. 486, 498, 58 A.2d 698 (1948); the trial court's decision must stand. . . . *Advest, Inc.* v. *Wach-*

*tel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995)." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, supra, 256 Conn. 566.

"Where the trial court reaches a correct decision but on [alternate] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978). [W]e . . . may affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court record. *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 702, 694 A.2d 788 (1997)." (Internal quotation marks omitted.) *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 794, 749 A.2d 1144 (2000).

"The [r]edevelopment [a]ct authorizes the taking of land in an area which has been determined by the [redevelopment] agency to be a 'redevelopment area.' " *Gohld Realty Co.* v. *Hartford*, 141 Conn. 135, 146, 104 A.2d 365 (1954). General Statutes § 8-125 (b) provides in relevant part that " '[r]edevelopment area' means an area within the state which is deteriorated, deteriorating, substandard or detrimental to the safety, health, morals or welfare of the community. An area may consist partly or wholly of vacant or unimproved land or of land with structures and improvements thereon, and *may include structures not in themselves substandard or insanitary which are found to be essential to complete an adequate unit of development*, if the redevelopment area is deteriorated, deteriorating, substandard or detrimental. . . ." (Emphasis added.) "Thus it is clear that the legislature has delegated to each redevelopment agency the power to determine, within certain limits, what property it is necessary to take in order to effectuate a complete redevelopment plan which the agency has adopted." *Gohld Realty Co.* v. *Hartford*, supra, 146.

"The determination of what property is necessary to be taken in any given case in order to effectuate the public purpose is, under our constitution, a matter for the exercise of the legislative power. When the legislature delegates the making of that determination to another agency, the decision of that agency is conclusive . . . ."Id. The agency's decision, however, is "open to judicial review only to discover if it was unreasonable or in bad faith or was an abuse of the power conferred." Id. The redevelopment agency is permitted "to determine, in good faith, what land it is necessary to appropriate in order to accomplish the public purpose. It is proper for a redevelopment agency, acting in pursuance of the act, to fix, within reasonable limits, the area of redevelopment and to include in a taking all property which is in a deteriorated area, even though certain of the properties are not in themselves substandard." Id., 147.

Although, "[t]he determination of what constitutes a redevelopment area and what property is to be taken is primarily a matter for the redevelopment agency . . . its decision is open to judicial review . . . to discover whether it has acted unreasonably or in bad faith or has exceeded its powers. . . . The inclusion within the area of certain properties which are not substandard does not constitute unreasonable or arbitrary action, because it is the condition obtaining as to the entire area and not as to individual properties which is determinative." (Citations omitted.) *Graham* v. *Houlihan*, 147 Conn. 321, 328, 160 A.2d 745, cert. denied, 364 U.S. 833, 81 S. Ct. 70, 5 L. Ed. 2d 57 (1960). The legislature, however, has prescribed in the definition of a redevelopment area that the agency "shall include [only] properties 'which are found to be *essential* to complete an adequate unit of development.'" (Emphasis added.) *Gohld Realty Co.* v. *Hartford*, supra, 141 Conn. 149. Therefore, property that is not substandard and that is

the subject of a taking within a redevelopment area must be essential to the redevelopment plan in order for the agency to justify its taking.

Further, although we have stated that, in determining whether property that is not substandard is essential to the plan of redevelopment, "it is the condition obtaining as to the entire area and not as to individual properties which is determinative"; *Graham* v. *Houlihan,* supra, 147 Conn. 328; see *Gohld Realty Co.* v. *Hartford,* supra, 141 Conn. 145–46; we also have recognized that the agency must consider "whether [the property] could be successfully integrated into the overall plan for the area in order to achieve its objective. If [the property] could not be, then the acquisition of the property was essential to complete an adequate unit of development, even though the property was not, in itself, substandard." *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 52, 184 A.2d 797 (1962). Conversely, if the property can be integrated, it is logical to conclude that the acquisition is not essential.

This court has recognized the importance of considering the condition and use of and the possibility of integrating property that is the subject of a taking and is located within a redevelopment area. These are significant factors that the agency must take into consideration when determining whether property that is not substandard is essential to complete the development.

It is incumbent upon the condemnor to exhaust "all reasonable efforts to obtain the land it desires, by agreement." *New York, N. H. & H. R.R. Co.* v. *Long,* 69 Conn. 424, 438, 37 A. 1070 (1897); *West Hartford* v. *Talcott,* 138 Conn. 82, 89, 82 A.2d 351 (1951). The authority to condemn is to be strictly construed in favor of the owner and against the condemnor. *State* v. *McCook,* 109 Conn. 621, 630, 147 A. 126 (1929). The statute, however, "should be enforced in such a way as to effectuate

the purpose for which it was enacted." (Internal quotation marks omitted.) *West Hartford* v. *Talcott*, supra, 90; *Crawford* v. *Bridgeport*, 92 Conn. 431, 435, 103 A. 125 (1918).

After an area is taken for redevelopment purposes some, or even all, of the land taken may be sold or leased to private individuals, referred to as redevelopers, even if they are not the original owners. *Gohld Realty Co.* v. *Hartford*, supra, 141 Conn. 143. "It is, of course, conceivable that the power of eminent domain granted by the [redevelopment] act may be abused in some isolated instances. There may be attempts to use it for some ulterior purpose not contemplated by the [redevelopment] act. See *Farist Steel Co.* v. *Bridgeport*, 60 Conn. 278, 292, 22 A. 561 [1891]; *Schneider* v. *District of Columbia*, 117 F. Sup. 705, 716 [D.D.C. 1953]." *Gohld Realty Co.* v. *Hartford*, supra, 145.

In *Pet Car Products, Inc.* v. *Barnett*, supra, 150 Conn. 48, the trial court found that the plaintiff's property was partly in substandard condition and that the redevelopment area also was substandard. The court also found that the taking of the property was essential to avoid problems that would hinder the success of the planned redevelopment if the property were not taken, including traffic congestion and insufficient parking and maneuvering areas. Id., 49, 53. Also, the boundaries of the plaintiff's property negatively impacted the proposed street layouts and setback lines, and adversely affected the character of the buildings that the plan was designed to attract. Id., 49, 52. This court concluded that the trial court properly had found that the agency had not acted unreasonably or in excess of its powers in determining that the acquisition of the plaintiff's buildings was essential for the completion of an adequate unit of development. Id., 53. We recognized, however, that "whether [the property can] be . . . integrated into the overall plan" should be considered. Id., 52.

In *Broadriver, Inc.* v. *Stamford*, 158 Conn. 522, 534, 265 A.2d 75 (1969), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970), we also indicated that a redevelopment agency must reasonably consider integration of property that is being subjected to eminent domain powers. In that case, the record indicated that the plaintiff had attempted but failed to demonstrate to the court that the defendant had acted unreasonably when it denied the plaintiff the right to improve its property within the development plan. Id., 534–35. Although the appeal was resolved in favor of the agency, this court made it clear that "[a]lthough the plaintiff's concern is for its own parcel within the redevelopment area, the commission's responsibility [is] to consider conditions existing in the entire area including such matters as street layouts and the relation and significance of the plaintiff's property to the entire area. *Pet Car Products, Inc.* v. *Barnett*, [supra, 150 Conn. 52]." *Broadriver, Inc.* v. *Stamford*, supra, 534.

Although in these two cases we concluded that the redevelopment agency properly had considered integration and had acted in a reasonable manner, we also established that a redevelopment agency must make reasonable efforts to negotiate and consider the integration of the property that is not substandard into the overall redevelopment plan.

In the present case, the defendants argue on appeal that East Side NDP Area No. 1 has been designated a renewal area for almost thirty years and that the parties agree that this overall area is of the type specified in General Statutes § 8-125 (b)[2] because the location is

---

[2] General Statutes § 8-125 (b) provides: " 'Redevelopment area' means an area within the state which is deteriorated, deteriorating, substandard or detrimental to the safety, health, morals or welfare of the community. An area may consist partly or wholly of vacant or unimproved land or of land with structures and improvements thereon, and may include structures not in themselves substandard or insanitary which are found to be essential to complete an adequate unit of development, if the redevelopment area is deteriorated, deteriorating, substandard or detrimental. An area may include

blighted physically, economically and aesthetically and is in need of redevelopment. According to the defendants, upon designation of the area as a redevelopment area, the city had legal authority to acquire all properties within the boundaries of the redevelopment project regardless of whether the individual parcels were blighted. Additionally, the defendants argue that it is the blighted condition of the project's locale *as a whole*, and not merely the condition of the plaintiff's individual parcel, that justifies the exercise of the defendants' eminent domain powers. The defendants contend that it was necessary to exercise its eminent domain power over the plaintiff's property because: (1) the redevelopment project has languished since the 1970s because the waterfront properties had not been included in the plan; (2) the inclusion of the six waterfront properties in the plan would enhance the success of the renewal project for the whole area; (3) the waterfront properties would provide value for the upland properties; (4) without including the waterfront properties in the plan of development, the success of the plan would be doubtful because it would be difficult to maximize the needed private investment without the value of the water's edge being leveraged to provide economic incentives; and (5) the city wanted to open up the waterfront area for public access.

The plaintiff agrees that the yacht club, which is not in a blighted condition, is surrounded by property that is deteriorating and in need of redevelopment. Further, the plaintiff agrees that under § 8-125, a property that is not blighted but is located in a blighted area may be taken by eminent domain when the property is essential

properties not contiguous to each other. An area may include all or part of the territorial limits of any fire district, sewer district, fire and sewer district, lighting district, village, beach or improvement association or any other district or association, wholly within a town and having the power to make appropriations or to levy taxes, whether or not such entity is chartered by the General Assembly . . . ."

to complete a development. The plaintiff argues, however, that the trial court properly ruled that the defendants had acted unreasonably by failing to negotiate with the plaintiff regarding the integration of its property into the redevelopment plan. The plaintiff argues further that because the condition of the nonblighted property and the use to which the property is devoted are significant, a nonblighted property that is not essential to the plan may not be taken for redevelopment purposes. The plaintiff claims that there is no evidence in the record that its land is essential for the redevelopment of the blighted area. The plaintiff asserts that the trial court properly granted the relief sought in ordering the defendants to reconvey the property to the plaintiff. We agree with the plaintiff.

The present case is distinguishable from *Pet Car Products, Inc.* v. *Barnett*, supra, 150 Conn. 42, and *Broadriver, Inc.* v. *Stamford*, supra, 158 Conn. 522, because in those cases this court concluded that the redevelopment agencies properly had considered integration and had acted in a reasonable manner. In this case, the agency provided no reasons to explain why the present condition and use of the plaintiff's property was detrimental to the development plan. The city provided no specific reasons, other than to enhance desirability of the area to investors, as to why the plaintiff's property, which both parties stipulated to be in good condition, is essential to the accomplishment of the redevelopment plan.

Further, the plaintiff had communicated on multiple occasions its desire and willingness to make changes to its property in order to have the property incorporated into the final redevelopment plan.[3] Indeed, in

---

[3] The plaintiff sent a letter to Joseph Ganim, the city's mayor, on July 14, 1998. The letter detailed the plaintiff's desire to support the Harbour Place development and its willingness to meet with city officials. The city, by letter from Freimuth, declined to respond.

order to have the property integrated properly, the plaintiff was amenable to building whatever was necessary on its property and to opening its waterfront areas for public access. We conclude that it is unreasonable for a redevelopment agency, even with broad legislative authority delegated to it, arbitrarily to reject repeated requests to negotiate some form of assimilation into the overall redevelopment plan when the subject property is in good condition and is economically viable.

As the trial court indicated, waterfront property is a shrinking commodity and in short supply. As that court noted in its memorandum of decision, "[j]ust because the property may be desirable to the defendants does not justify its taking by eminent domain." The city has failed to establish that the taking was essential to implement the plan of redevelopment and that its refusal to negotiate with the plaintiff any assimilation of its property into the plan was reasonable and not in bad faith. Therefore, the defendants acted unreasonably.

We conclude that the trial court reasonably concluded that the defendants acted unreasonably when they failed to consider or even discuss integration of the plaintiff's property into the redevelopment plan and that the defendants had failed to establish that taking of the plaintiff's property by eminent domain was therefore necessary and essential to the redevelopment plan. We affirm the trial court's decision granting a mandatory injunction requiring the defendants to reconvey the property to the plaintiff.

The judgment is affirmed.

In this opinion the other justices concurred.